UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61946-CV-ALTMAN

**AL L. BURGESS**,

*Petitioner*,

v.

**MARK S. INCH**,

*Respondent.*

_____/

## ORDER DISMISSING PETITION

The Petitioner, Al L. Burgess, is a Florida prisoner challenging the constitutionality of his state resentencing in Case No. 97-1342CF10A. *See* Petition [ECF No. 1]. The Respondent asks the Court to dismiss the Petition as "untimely." Response [ECF No. 9] at 12. Having carefully reviewed the record and the governing law, we agree that the Petition is time-barred and now **DISMISSS**.

### THE HISTORY

In 1997, the State charged the Petitioner with armed kidnapping (Count One), armed sexual battery (Count Two), and aggravated battery with a deadly weapon (Count Three). *See* Indictment [ECF No. 10-1] at 10–13. A Florida jury found the Petitioner guilty of all three counts, *see* Judgment [ECF No. 10-1] at 15–16, and a Florida judge sentenced him to two concurrent terms of life in prison (for Counts I & II) and a consecutive term of life in prison (on Count III), *see* Initial Sentencing Order [ECF No. 10-2] at 18–28.

Nearly two decades later, on September 16, 2016, the trial court resentenced the Petitioner to two consecutive terms of life in prison (for Counts I & II) and 15 years in prison (for Count III), the latter to be served concurrently with the life sentenced the court imposed on Count II. *See* Resentencing Order [ECF No. 10-2] at 105–13. The Petitioner appealed. *See* Notice of Appeal of

Resentencing [ECF No. 10–2] at 120–21; Initial Brief on Appeal from Resentencing [ECF No. 10-2] at 139–72.

Although the Fourth DCA affirmed this sentence, it remanded for the trial court to correct a "scrivener's error to reflect the correct offense that formed the basis for the [Petitioner's] sexual predator designation." *Burgess v. State*, 252 So. 3d 767 (Fla. 4th DCA 2018). On September 12, 2018, after the trial court fixed the scrivener's error, the Fourth DCA denied the Petitioner's motion for rehearing, clarification, and a written opinion. *See* Order Denying Motion for Rehearing, Clarification, and for a Written Order [ECF No. 10-2] at 208. Sixteen days later, on September 28, 2018, the court issued its mandate. *See* Resentencing Mandate [ECF No. 10-2] at 210.

On June 12, 2019, the Petitioner filed a Motion for Postconviction Relief under Fla. R. Crim. P. 3.850, *see* 2019 Rule 3.850 Motion [ECF No. 10-2] at 251–63, which the trial court denied on October 31, 2019, *see* Order Denying 2019 Rule 3.850 Motion [ECF No. 10-2] at 273–77. The Petitioner appealed this decision on December 12, 2019. *See* Notice of Appeal on Denial of 2019 Rule 3.850 Motion [ECF No. 10-2] at 279–81. This time, the Fourth DCA summarily affirmed, *see Burgess v. State*, 292 So. 3d 748 (Fla. 4th DCA 2020), and issued its mandate on May 1, 2020, *see* Mandate for Case No. 4D19-3944 [ECF No. 10-3] at 8. The Petitioner filed this Petition some four months later, on September 17, 2020. *See* Petition at 30.

## THE LAW

"[A] person in custody pursuant to the judgment of a State court" has one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That limitation period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

2

> States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D). Of course, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not "counted toward any period of limitation under this subsection." § 2244(d)(2).

## ANALYSIS

### A. § 2244(d)(1)(A)

Under § 2244(d)(1)(A), a habeas petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file a habeas petition in federal court. "AEDPA's statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence." *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2003). The resentencing in *Ferreira* thus "triggered the running of AEDPA's statute of limitations [even though the petitioner's] habeas petition only challenge[d] the original [and underlying] 1997 conviction." *Id.* at 1292–93. In other words, it's only "where a resentencing [proceeding] results in *a new judgment*" that "the new judgment restarts the statute of limitations." *Thompson v. Fla. Dep't of Corr.*, 606 F. App'x 495, 502 (11th Cir. 2015) (emphasis added).

Of course, "not all post-judgment changes or corrections to a sentence" will qualify as a "new judgment for purposes of § 2244(d)(1)(A)." *Id.* at 502 n.8 (cleaned up). "The relevant question is not the magnitude of the change, but the issuance of a new judgment *authorizing* the prisoner's

3

confinement." *Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1326–28 (11th Cir. 2017) (finding that the trial court's "order bar[ring] the imposition of chemical castration," but "not otherwise address[ing] the term of Patterson's imprisonment," did *not* qualify as a new judgment).

In our case, the Respondent concedes that the Petitioner's resentencing constituted a new judgment. *See* Resp. at 11 ("Here, the new sentence on *de novo* resentencing constituted a new judgment."). The Petitioner's judgment thus became final on September 28, 2018—when the Fourth DCA issued its Resentencing Mandate. *See Ferreira*, 494 F.3d at 1288, 1292–93 ("Ferreira was resentenced, and the mandate finalizing that judgment issued on April 14, 2003 . . . . Therefore, the April 14, 2003 judgment that imprisoned Ferreira controls the statute of limitations for this petition because the period begins to run when both the conviction *and* sentence are final."). In other words, the Petitioner had one year—or until September 28, 2019—to file this Petition. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) ("[T]he limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run."). But he didn't file his Petition until September 17, 2020—almost one year too late. *See generally* Petition.

Now, of course, limitations time doesn't necessarily run continuously. A petitioner may avoid a time bar by filing certain motions that toll (or extend) the limitations period. And the Petitioner filed just such a motion in this case. Recall that, on June 12, 2019, the Petitioner filed his 2019 Rule 3.850 Motion. *See* 2019 Rule 3.850 Motion; *see also Brown v. Sec'y, Fla. Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008) ("[A] properly filed Rule 3.850 motion seeking to set aside a conviction would undoubtedly toll AEDPA's limitations period during its pendency[.]"). By that time, however, 257 of the limitations period's 365 days had passed.[1] The period then restarted on May 1, 2020, when the Fourth DCA

---

[1] That's 257 days from September 28, 2018 to June 12, 2019.

issued its mandate affirming the trial court's Order Denying the 2019 Rule 3.850 Motion. *See* Mandate for Case No. 4D19-3944; *see also Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) ("We conclude, therefore, that the district court erred in failing to find that Nyland's motions were pending until the mandates issued and, presuming Nyland's second motion for state post-conviction relief was properly filed, his instant § 2254 petition was timely filed."). And therein lies the problem: Between May 1, 2020—when the limitations period restarted—and September 17, 2020—when this Petition was filed—139 more days elapsed. And, when we add 139 to 257, we get 396. Since 396 is greater than 365, the Petitioner's claim is time-barred.[2]

### B. § 2244(d)(1)(B)

Hoping to qualify under § 2244(d)(1)(B), the Petitioner alleges that he "did not have access to the Court from March 2020 thru July 26, 2020 because of the coronavirus pandemic." Petition at 13. He says that he "was under quarantine" during that time "after testing positive for the coronavirus." *Id.* at 14. He was "released from isolation on July 24, 2020 and received access to the Court on July 27, 2020." *Id.* He was then placed in "quarantine again on September 10, 2020." *Id.*

Still, the Petitioner hasn't met the elements of § 2244(d)(1)(B), which runs the limitations period from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." To begin with, the "impediment" in § 2244(d)(1)(B) "requires state action that both 'violated . . . the Constitution or laws of the United States' and 'prevented [the prisoner] from filing' his federal petition." *Johnson v. Sec'y, Fla. Dep't of Corr.*, 513 F.3d 1328, 1331–32 (11th Cir. 2008) (quoting § 2244(d)(1)(B)). And the Petitioner hasn't alleged that the prison's quarantine procedures violated the Constitution or laws of the United States in some way. *See generally*

---

[2] The Petitioner is thus wrong when he says that the "Petition is timely" because the "sum total of untolled time to file the Petition is 340 days." Motion to Show Timeliness [ECF No. 16] at 2.

5

Petition; *see also Wyzykowski v. Sec'y, Fla. Dep't of Corr.*, 226 F.3d 1213, 1216 (11th Cir. 2000) ("[I]n the event of illegal state action preventing the petitioner from filing, the limitation period does not begin until after the state impediment is removed." (citing § 2244(d)(1)(B))).

Nor do the Petitioner's quarantine complaints excuse his untimeliness. The Petitioner, remember, filed his habeas Petition on September 17, 2020—this, despite reentering quarantine as of "September 10, 2020." Petition at 14. Since he managed to file his Petition while he was in quarantine, the Petitioner has failed to show that his earlier quarantine (from March to July) prevented him from filing sooner. Plus, for what it's worth, the Petitioner hasn't explained why he failed to file his Petition *before* the pandemic began in March of 2020. And he's made no effort to show that the prison's justifiable decision to protect its prisoners by effectuating a strict lockdown violated the Constitution or laws of the United States. In short, § 2244(d)(1)(B) provides no relief.

### C. § 2244(d)(1)(C)

The Petitioner doesn't rely on any new Supreme Court cases, *see generally* Petition, so § 2244(d)(1)(C) is likewise inapplicable, *see* § 2244(d)(1)(C) (running the limitations period from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").

### D. § 2244(d)(1)(D)

Nor does the Petitioner offer any new facts that could not "have been discovered through the exercise of due diligence." In Ground One, for instance, the Petitioner says that his resentencing counsel was ineffective for failing to object to the upward departure. *See* Petition at 5, 15–23 ("Counsel had a duty to object to the illegal departure sentences on Counts 1 and 2 as he did on Count 3."). And, in Ground Two, the Petitioner blames his resentencing counsel for failing to ask the trial court to articulate some basis for its upward departure. *See id.* at 6, 24–30 ("Counsel was ineffective for failure

6

to object when the sentencing judge imposed upward guidelines departure sentences and did not orally articulate the reason for departure at the time [the] sentences were imposed."). We needn't delve into the merits of these claims, though, because they're premised on facts that have been available to the Petitioner since the day of his resentencing. Section 2244(d)(1)(D), in sum, doesn't save the Petitioner here.

### D. Equitable Exceptions

Nor can the Petitioner benefit from either of the two *equitable* exceptions to § 2244(d)(1). To justify the first such exception—equitable tolling—he would have to "show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (cleaned up); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (same). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (cleaned up). The Petitioner bears the burden of justifying the application of equitable tolling with "specific" allegations. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014) ("The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory.").

The Petitioner has failed to show that he pursued his rights diligently. In fact, as we've said, he hasn't told us anything about (1) what efforts he took to file his Petition *before* the quarantine, or (2) whether he even tried to access the Court—or otherwise pursue his rights—*after* the pandemic began. He thus fails at the first prong of the equitable-tolling test. *See Arthur v. Allen*, 452 F.3d 1234, 1253 (11th Cir.), *opinion modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006) ("To show diligence, a petitioner claiming deficiencies in the prison law library must provide details of the specific actions taken toward filing the petition.").

The second exception—actual innocence—helps the Petitioner even less. "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). As a result, "time limitations apply to the typical case in which no allegation of actual innocence is made." *Id.* at 394. The Petitioner doesn't allege that he's "actually innocent"—which is reason enough to dispense with this second exception. *See generally* Petition. Nor could he. The Petitioner, after all, is challenging *only* his resentencing lawyer's failure to object to certain *sentencing* enhancements—and not to any aspect of his criminal *conviction*.

The Petitioner, in short, doesn't qualify for equitable tolling—and he never argues that he does. *See generally id.*

### EVIDENTIARY HEARING

Because the record unequivocally precludes relief, we needn't hold an evidentiary hearing on the Petitioner's claims. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### CERTIFICATE OF APPEALABILITY

A COA is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But, as here, "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial

8

of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)); *see also West v. United States*, 579 F. App'x 863, 865 (11th Cir. 2014) ("Where the district court denies relief on procedural grounds the petitioner seeking a COA must show that: (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right; *and* (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

Because no "jurists of reason" would find the Petition's untimeliness "debatable," the Petitioner has failed to show that he's entitled to a COA.

* * *

Having carefully reviewed the record and the governing law, the Court hereby

**ORDERS AND ADJUDGES** that the Petition [ECF No. 1] is **DISMISSED**. A COA is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of June 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Al L. Burgess
       654332
       Everglades Correctional Institution
       Inmate Mail/Parcels
       1599 SW 187th Avenue
       Miami, FL 33194
       PRO SE

Melynda Layne Melear
Attorney General Office
1515 N Flagler Drive
9th Floor
West Palm Beach, FL 33401-3432
561-837-5000
Email: crimappwpb@myfloridalegal.com

Noticing 2254 SAG Broward and North
Email: CrimAppWPB@MyFloridaLegal.com