UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61946-CIV-ALTMAN

AL L. BURGESS,

     *Petitioner,*

*v.*

RICKY D. DIXON, SECRETARY,
DEPARTMENT OF CORRECTIONS,

     *Respondent.*[1]

_____/

## ORDER

Our Petitioner, Al L. Burgess, is a Florida prisoner who's filed a habeas petition under 28 U.S.C. § 2254, challenging the constitutionality of his state-court conviction and sentence. *See* Petition [ECF No. 1]. The state courts have uniformly rejected Burgess's post-conviction motions. Because those courts reasonably applied federal law—and reasonably determined the facts—we now **DENY** the Petition in full.

### THE FACTS

On February 24, 1997, the State of Florida charged Burgess by Information with three crimes: armed kidnapping (Count 1); armed sexual battery (Count 2); and aggravated battery while armed with a deadly weapon (Count 3). *See* Information [ECF No. 10-1] at 11–13. Burgess proceeded to trial, where a jury found him guilty of all three counts. *See* Judgment [ECF No. 10-1] at 15–16. For these

---

[1] The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections on November 19, 2021. Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

crimes, a state judge sentenced Burgess as a "habitual violent felony offender" ("HVFO") to three mandatory-minimum life terms. *See* Sentencing Orders [ECF No. 10-1] at 18–26.

After sentencing, Burgess (through counsel) filed a motion to correct his sentence under FLA. R. CRIM. P. 3.800(b). *See* 3.800(b) Motion [ECF No. 10-1] at 30–35. There, Burgess advanced three arguments: (1) that the sentencing court failed to "orally impose minimum mandatory terms of imprisonment"; (2) that his life sentence on Count 3 was illegal because it exceeded the maximum statutory penalty of "30 years in prison"; and (3) that "the written judgment of conviction should reflect that the defendant was convicted of kidnapping," not *armed* kidnapping. *Id.* at 32–33. The State conceded Burgess's first two arguments but, with respect to the third, argued that he was properly convicted on Count 1 of "armed kidnapping." Response to 3.800(b) Motion [ECF No. 10-1] at 40 ("[T]he State of Florida does not oppose the GRANTING of relief . . . such that any minimum mandatory sentences are stricken, and the sentence on [Count 3] (aggravated battery with a deadly weapon) is reduced to 30 years incarceration. All other relief . . . as to Burgess's conviction of armed kidnapping under [Count 1] should be DENIED[.]"). With this concession in hand, the state trial court issued an amended sentence, *nunc pro tunc* to July 16, 1999, which imposed two concurrent life sentences (without a mandatory minimum) on Counts 1 and 2 and a thirty-year sentence on Count 3, to be served consecutively to the sentences for Counts 1 and 2. *See* Amended Sentencing Orders [ECF No. 10-1] at 42–47.

On June 20, 2007,[2] Burgess returned to state court and filed a "Motion to Correct Illegal Sentence" under FLA. R. CRIM. P. 3.800(a). *See* 3.800(a) Motion [ECF No. 10-1] at 272–76. In that motion, Burgess argued that his conviction as a "habitual violent felony offender" was illegal under

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

Florida law, and he asked to be resentenced under Florida's "sentencing guideline scoresheet." *Id.* at 272. In its response[3] to Burgess's 3.800(a) Motion, the State agreed that Burgess's "HVFO designation was 'illegal[.]'" 3.800(a) Response [ECF No. 10-1] at 278. As the State explained, "[a]lthough a 1996 version of [FLA. STAT. § 775.084(1)(b)] authorized a HVFO designation for life felonies, adoption of the legislation providing this authorization has been held unconstitutional." *Ibid.* (citing *Ford v. State*, 868 So. 2d 631, 631 (Fla. 2d DCA 2004)). At the same time, the State disagreed that Burgess was legally entitled to a resentencing hearing because, in the State's view, he could have lawfully received the same sentence—with or without the HVFO designation. *See id.* at 279 ("[H]e does not provide any factual basis to establish that the life sentences imposed were actually 'illegal' or a 'kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances.'" (quoting *Calixte v. State*, 162 So. 3d 283, 284 (Fla. 4th DCA 2015))). The state postconviction court adopted the State's 3.800(a) Response, removed Burgess's HVFO designation, and denied Burgess's request for a resentencing. *See* Order Granting in Part and Denying in Part 3.800(a) Motion [ECF No. 10-1] at 281.

Burgess appealed this ruling to the Fourth DCA. *See* 3.800(a) Notice of Appeal [ECF No. 10-1] at 286. On January 6, 2016, the Fourth DCA agreed with Burgess that the lower court "was required to reconsider Appellant's sentences under the sentencing laws in effect at the time of his offenses." *Burgess v. State*, 182 So. 3d 841, 842 (Fla. 4th DCA 2016). The appellate court thus remanded the case for a resentencing, noting that "the trial court is free to impose departure sentences if valid grounds for departure are proven." *Ibid.*; *see also* Order Vacating Prior Sentences [ECF No. 10-2] at 91 ("The Court does hereby VACATE the Defendant's prior sentences on all three counts in this case.").

---

[3] The State filed this response on April 9, 2015—nearly eight years after Burgess gave his 3.800(a) Motion to prison officials for mailing. *See* 3.800(a) Response [ECF No. 10-1] at 279. The record gives us no explanation for this delay.

Burgess's resentencing took place over two days—on September 6 and 12, 2016. *See generally* Resentencing Hr'g Tr. [ECF No. 11-1] at 1–85. In anticipation of that hearing, the State contended that Burgess "is subject to the provisions of [FLA. STAT. § 921.0016(3)(r)] and a proper candidate for imposition of an aggravated departure sentence." State's Motion to Aggravate Sentence [ECF No. 10-2] at 98. Burgess, represented by counsel, insisted that an aggravated sentence wasn't necessary. *See* Resentencing Hr'g Tr. [ECF No. 11-1] at 64–65 ("The score sheet I think he scores 20 years. The only way you can give higher than that is find he's upward departure. . . . Judge, honestly we should look at the last 20 years of what is going on. We put that package of mitigation to show you he's been doing DOC. He's not sitting idly. He's not involved in physical altercations. He's trying to better himself."). Ultimately, though, the sentencing judge agreed with the State and found that an upward departure was warranted. *See* Order on Resentencing [ECF No. 10-2] at 101–02 ("The State argued the maximum penalty is warranted by the repeated commission of egregious conduct as established by the records admitted during this proceeding. This Court concludes likewise."). As a result, the resentencing court reimposed life sentences on Counts 1 and 2, but reduced Burgess's sentence on Count 3 to fifteen years. *See* Second Amended Sentencing Orders [ECF No. 10-2] at 105–13.

Burgess, now *pro se* again, appealed his renewed sentence to the Fourth DCA. *See* Resentencing Notice of Appeal [ECF No. 10-2] at 120. In that appeal, he raised five arguments: (1) that the trial court erred in denying a "motion to correct sentencing error" when it found that "the jurisdictional time frame had expired to rule upon said motion"; (2) that "the trial court failed to give the oral pronouncement for the reason of the departure sentences"; (3) that the trial court improperly considered Burgess's previous convictions for "indecent assault and kidnapping" to "support the maximum guidelines sentence range and the departure sentences"; (4) that the trial court improperly relied on other convictions, "which [were not] committed prior to the conviction of the primary

offense"; and (5) that the trial court improperly designated Burgess as a "capital sexual predator[.]" Resentencing Initial Brief [ECF No. 10-2] at 149–51.

On July 25, 2018, the Fourth DCA affirmed the sentencing court in almost every respect—but it remanded the case for the trial judge to correct a scrivener's error in the sentencing order. *See Burgess v. State*, 252 So. 3d 767, 767 (Fla. 4th DCA 2018) ("Appellant raises five issues on appeal. We find them all to be without merit. However, we remand for the trial court to correct a scrivener's error in the basis for designating appellant a sexual predator. The written order mistakenly based the designation on a conviction for sexual battery upon a child under section 794.011(2)(a). In fact, appellant was convicted of armed sexual battery on a person over twelve but under eighteen under section 794.011(4)(a)."). The Fourth DCA's mandate issued on September 28, 2018. *See* Resentencing Mandate [ECF No. 10-2] at 210.

On June 12, 2019, Burgess filed a third motion for postconviction relief under Fla. R. Crim. P. 3.850,[4] challenging some alleged errors in his resentencing. *See* Third Postconviction Motion [ECF No. 10-2] at 253–63. In this Third Postconviction Motion, Burgess advanced the following three claims: (1) that his resentencing counsel "rendered ineffective assistance for failing to object to the resentencing court's imposition of a departure sentence when no legitimate reason was available to support the departure," *id.* at 256; (2) that his resentencing counsel "rendered ineffective assistance by failing to object to the resentencing court's failure to orally articulate reasons for imposing a departure sentence," *id.* at 259; and (3) that "the trial court's written order does not comply with its oral pronouncement," *id.* at 261. The state postconviction court denied the Third Postconviction Motion in a written order. *See* Order Denying Third Postconviction Motion [ECF No. 10-2] at 273–77. Burgess appealed the denial of his Third Postconviction Motion to the Fourth DCA, *see* Third

---

[4] Burgess's two previous Rule 3.850 motions were fully adjudicated before his resentencing and are not relevant to this Petition. *See generally* First Postconviction Motion [ECF No. 10-1] at 125–74; Second Postconviction Motion [ECF No. 10-1] at 216–26.

Postconviction Motion Notice of Appeal [ECF No. 10-2] at 279, which affirmed the trial court's decision in an unwritten opinion, *see Burgess v. State*, 292 So. 3d 748, 748 (Fla. 4th DCA 2020). The Fourth DCA's mandate issued on May 1, 2020. *See* Third Postconviction Motion Mandate [ECF No. 10-3] at 8.

Burgess filed this federal Petition on September 17, 2020. *See* Petition at 30. In its Response, the Respondent initially maintained that the Petition was untimely under § 2244(d) because "409 days ran untolled" from September 28, 2018—when the "mandate on the affirmance of the new sentence after the de novo resentencing hearing issued[.]" Response to Order to Show Cause ("Response") [ECF No. 9] at 12. We originally agreed with the Respondent on this point and entered an Order dismissing the Petition as time-barred. In doing so, we said the following:

> Recall that, on June 12, 2019, the Petitioner filed his [Third Postconviction Motion]. By that time, however, 257 days of the limitations period's 365 days had passed. The period then restarted on May 1, 2020, when the Fourth DCA issued its mandate affirming the trial court's Order Denying the [Third Postconviction Motion]. And therein lies the problem: Between May 1, 2020—when the limitations period restarted—and September 17, 2020—when this Petition was filed—139 more days elapsed. And, when we add 139 to 257, we get 396. Since 396 is greater than 365, the Petitioner's claim is time-barred.

*Burgess v. Inch*, 2021 WL 2433958, at *3 (S.D. Fla. June 15, 2021) (Altman, J.) (cleaned up).

But, on July 7, 2021, Burgess filed a "Motion to Alter or Amend Judgment" under FED. R. CIV. P. 59(e), contending that we (and the Respondent) had miscalculated. We had assumed that the limitations period began on September 28, 2018. In Burgess's view, though, we should've afforded him "90 days to seek certiorari review in the United States Supreme Court" and thus shouldn't have started to calculate the limitations period until *after* this 90-day period had expired. Rule 59(e) Motion [ECF No. 20] at 2; *see also id.* at 1 ("[T]his Court calculated that the Petitioner's Conviction and Sentence became final on September 28, 2018, the date the [Fourth DCA] issued the mandate affirming the Petitioner's Resentencing. The Petitioner submits that this was error.").

Seeing some merit in this argument, we ordered the Respondent to file a *new* Response to Burgess's Rule 59(e) Motion. *See* Paperless Order [ECF No. 21]. And, on August 10, 2021, the Respondent conceded the point and "agree[d] that the Petitioner's petition was timely." Response to Rule 59(e) Motion [ECF No. 22] at 3. Since the Respondent waived its timeliness defense, we granted Burgess's Rule 59(e) Motion, reopened the case, and agreed to adjudicate Burgess's Petition on the merits. *See* Paperless Order [ECF No. 23] ("The Respondent, though, opted to waive its timeliness defense in this case and acknowledged its confusion as to its reading of Eleventh Circuit precedent. A limitations defense is waivable, and it would amount to an abuse of discretion for us to override a State's deliberate waiver of a limitations defense." (citing *Day v. McDonough*, 547 U.S. 198, 202 (2006) (cleaned up)). So here we are.

**THE LAW**

## I.      The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the

unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)).

8

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). This limitations defense is, of course, waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid*. In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the

State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

### III.    Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

ANALYSIS

### I.      The Petition is Exhausted and § 2254(d) Applies

In his Petition, Burgess asserts two grounds for relief—both of which allege that counsel rendered ineffective assistance during his resentencing. In Ground One, Burgess argues that the resentencing court "was prohibited to impose the current upward guidelines departure sentences" and that counsel was ineffective "for not objecting to the upward departure life sentences." Petition at 16. In Ground Two, Burgess castigates counsel for failing to object "when the sentencing judge imposed upward guidelines departure sentences and did not orally articulate the reason for departure at the time the sentences were imposed[.]" *Id.* at 24. Before we can address the merits of these two claims, though, AEDPA requires that we determine whether Burgess "exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Although the Respondent *can* "expressly waive" this requirement, *id.* § 2254(b)(3), the Response is silent on this issue, *see generally* Response.[5]

To exhaust a claim, a habeas petitioner must "present the state courts with the same claim he urges upon the federal courts." *McNair*, 416 F.3d at 1302 (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). This occurs once the petitioner has "present[ed] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Ward*, 592 F.3d at 1156. While the claims raised in a federal petition need not be a "verbatim restatement of the claims brought in state court," they must be sufficiently similar so that a "reasonable reader would understand each

---

[5] The Respondent acknowledges that both Grounds One and Two were "presented in the post-conviction relief motion in state court." Response at 22, 26. But this perfunctory statement isn't the sort of "express waiver" § 2254(b) demands. *See Telamy v. Sec'y, Fla. Dep't of Corr.*, 789 F. App'x 756, 757 (11th Cir. 2019) ("[A] state's mere failure to raise exhaustion does not constitute a waiver.").

claim's particular legal basis and specific factual foundation." *McNair*, 416 F.3d at 1302 (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)).

We're satisfied that both of the Petition's claims have been fully exhausted. Burgess raised the substance of Grounds One and Two in his Third Postconviction Motion in state court. *See* Third Postconviction Motion [ECF No. 10-2] at 257–58 ("Thus, the Defendant submits that there was absolutely no reason for Sentencing Counsel to not object to the Resentencing Court's imposition of a departure sentence in the Defendant's case. . . . Sentencing Counsel was aware of the general rule that when a court fails to impose a departure reason at one hearing a new reason cannot be articulated at a new hearing."); *id.* at 259 ("Sentencing Counsel rendered ineffective assistance by failing to object to the Resentencing Court's omission of a contemporaneously articulated departure reason that was required by rule to be given when passing sentence.").

Of course, "[i]n Florida, exhaustion usually requires not only the filing of a FLA. R. CRIM. P. 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (quoting *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)). But Burgess also appealed the state postconviction court's denial of his Third Postconviction Motion to the Fourth DCA and, in so doing, argued that the state postconviction court had erred in denying those two grounds. *See* Resentencing Initial Brief [ECF No. 10-2] at 291 ("The Postconviction Court erred in summarily denying Appellant's claim that Sentencing Counsel rendered ineffective assistance of counsel by failing to object to the departure sentence imposed . . . . The Postconviction Court erred in summarily denying Ground Two of [the Third Postconviction Motion] where Sentencing Counsel did not object when the Resentencing Court failed to orally articulate reasons contemporaneously with imposing the Appellant's sentence[.]"). Since "every issue raised in [Burgess's] federal petition" was also presented to the highest state court Burgess could've appealed to, the Petition's claims have been fully exhausted. *Ward*, 592 F.3d at 1156.

13

We'll thus review Grounds One and Two on their merits. AEPDA, though, rather strictly circumscribes our review of "any claim that was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d). In resolving those claims, therefore, we ask only whether the state court's decision "involved an unreasonable application of[] clearly established federal law" or "was based on an unreasonable determination of the facts[.]" *Ibid.* The last state court to adjudicate Burgess's claims on the merits was the Fourth DCA, which issued an unwritten opinion summarily affirming the resentencing court. *See Burgess*, 292 So. 3d at 748. We therefore perform a "'look-through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192. In our case, the resentencing court adopted and incorporated "the legal and factual reasoning that is contained in the State's Response[.]" Order Denying Third Postconviction Motion [ECF No. 10-2] at 276. Our task, then, is to review the *reasonableness* of the resentencing court's order—with a particular emphasis on those portions of the State's Third Postconviction Motion Response *that* court adopted. *See Cardona v. Dixon*, 2022 WL 2158715, at *6 (S.D. Fla. June 14, 2022) (Altman, J.) ("Since the [Fourth DCA] affirmed without a written decision, we 'look through' to the next reasoned decision (i.e., the trial court's Order Denying Post Conviction Relief, which incorporated the State's Response) as the presumptive reasoning of the Fourth DCA."). As we'll soon see, when we analyze Burgess's claims in that deferential light, we have no choice but to deny them both.

## II.     **Ground One**

Ground One has a long and tortuous history. In it, Burgess maintains that his resentencing counsel should've objected when the resentencing court imposed an "upward departure sentence," because, at the time of his resentencing (Burgess says), Florida law "prohibited the departure sentences on Counts 1 and 2." Petition at 21. To understand this argument, we have to go way back to Burgess's original sentence in 1999, when the trial court sentenced Burgess as a "habitual violent felony

offender." *Id.* at 14 ("Petitioner's HVFO designations [were] originally imposed on July 16, 1999[.]");
*see also* Sentencing Orders [ECF No. 10-1] at 18–26. According to Burgess, even though this HVFO
enhancement was "*deleted* on August 8, 2000," the 2000 state court *still* imposed life sentences on
Counts 1 and 2. Petition at 16 (emphasis added). This is important because, in Burgess's view, the
2000 state court couldn't have imposed a life sentence unless: (1) the HVFO enhancement applied, or
(2) the court departed upward from the guideline range. *See ibid.* Since (Burgess says) the 2000 state
court *didn't* apply the HVFO enhancement, it (he surmises) *must've* departed upward. *See id.* at 18. And,
because the Fourth DCA ultimately reversed the 2000 sentence, *see Burgess*, 182 So. 3d at 842, Burgess
believes as a matter of Florida law that "the 2016 resentencing court was prohibited to impose the
current upward guidelines departure sentences" for a second time. Petition at 16; *see also, e.g.*, *Shull v.
Dugger*, 515 So. 2d 748, 750 (Fla. 1987) ("[W]e hold that a trial court may not enunciate new reasons
for a departure sentence after the reasons given for the original departure sentence have been reversed
by an appellate court.").

The Respondent, predictably, has a different view. As it sees things, the HVFO designation
wasn't stricken *until 2015*. *See* Response at 24 ("Respondent asserts that the habitual offender
designation was not removed in 2000 on the 3.800(b)(2) motion."). Of course, if the Respondent is
right, then Burgess *continued* to serve an HVFO sentence after 2000, and Florida law didn't prohibit
the resentencing court from departing upward in 2016. *See id.* at 23–24 ("Therefore, had the sentences
been challenged prior to 2015 based on an argument that the sentences were illegal departures, the
trial court would have been afforded the opportunity to impose a departure sentence with valid
reasons on remand."). The Respondent offers three arguments for its position: (1) that, until Burgess's
original sentence was vacated in 2015, "all parties proceeded as if Petitioner was serving a habitual
offender sentence," *id.* at 23; (2) that the HVFO sentence couldn't have been vacated in 2000 because
the sentencing court's new sentence was "entered *nunc pro tunc*" to the original 1999 judgment—which

had originally imposed the HVFO enhancement, *id.* at 24–25; and (3) that, *before* the 2016 resentencing, the Fourth DCA had expressly held that "the trial court was free to impose a departure sentence on remand," *id.* at 26.

To properly adjudicate this claim, we must first take two detours. *One*, we need to clarify what *exactly* we can (and can't) review. As a federal court, we can (of course) decide whether Burgess "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). At the same time, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992). This dichotomy between what we can and can't review plays very much in the foreground of a case like ours, where the petitioner is alleging that his lawyer violated the U.S. Constitution (rendering ineffective assistance) by "fail[ing] . . . to raise a state law claim[.]" *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). In such a case, we *can* assess whether the state court properly applied *Strickland* (and its Sixth Amendment progeny), but we cannot second-guess the state court's construction of state law. *See ibid.* ("And although 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *see also Pierre v. Dixon*, 2022 WL 3549781, at *6 (S.D. Fla. Aug. 18, 2022) (Altman, J.) ("In other words, even when a habeas petitioner alleges that counsel was ineffective in his handling of a *state-law issue*, a federal court may review the state court's application of the *Strickland* test. What we may not do, however, is second-guess the state court's resolution of *state law*." (emphasis in original & cleaned up)).

*Two*, having set out these ground-rules, we must now journey into the sometimes-convoluted world of Florida sentencing law. According to the Information, Burgess committed the charged

offenses on July 17, 1996. *See* Information [ECF No. 10-1] at 11–12. Under Florida law, therefore, his sentence must comply with whatever laws were in effect on July 17, 1996. *See, e.g., Vonador v. State*, 857 So. 2d 323, 324 (Fla. 2d DCA 2003) ("[I]t is axiomatic that a criminal sentence is governed by the laws in effect at the time of the offense."); *Larkins v. State*, 739 So. 2d 90, 96 n.5 (Fla. 1999) ("Although the statute has since changed in that persons convicted of capital crimes are no longer eligible for parole, Larkins' sentence is controlled by the law in effect at the time he committed this offense."). To cut right to it, Burgess's sentence must conform to Florida's 1994 Sentencing Guidelines.[6] *See* Fla. R. Crim. P. 3.703(a) ("This rule implements the 1994 sentencing guidelines, as amended, in strict accordance with chapter 921, Florida Statutes. This rule applies to offenses committed on or after October 1, 1995, or as otherwise indicated."); *accord Plasencia v. Sec'y, Fla. Dep't of Corr.*, 606 F. App'x 511, 514 (11th Cir. 2015) ("Thus, individuals who committed crimes between October 1, 1995 and May 24, 1997, were sentenced under the 1994 sentencing guidelines.").

So, how did the 1994 Sentencing Guidelines work? Based on a series of calculations—which considered factors like the severity of the crime, the defendant's prior criminal history, and the extent of the victim's injuries—the State computed the defendant's "total sentence points," which it could then easily convert into a "presumptive sentence." Fla. R. Crim. P. 3.703(d)(26)–(27). Assuming no objections to these calculations, the trial court would then use the "presumptive sentence" as a baseline

---

[6] The Florida legislature adopted the "1995 Sentencing Guidelines" with the intention of having them apply to all felony offenses committed on or after October 1, 1995. *See Trapp v. State*, 760 So. 2d 924, 928 (Fla. 2000) (noting that the "amended guidelines provisions became effective" on October 1, 1995). But the Florida Supreme Court later held that the legislature's initial adoption of the 1995 Sentencing Guidelines violated the "single subject rule" set out in "article III, section 6 of the Florida Constitution." *Heggs v. State*, 759 So. 2d 620, 627 (Fla. 2000). Even more confusingly, on May 24, 1997, the Florida legislature eliminated the constitutional error the Florida Supreme Court had identified in *Heggs* by properly reenacting the 1995 Sentencing Guidelines. *Cf. Trapp*, 760 So. 2d at 927 ("[T]he general mechanism for curing single subject rule violative chapter laws is through the Legislature's biennial adoption of the Florida Statutes."). What this all means is that "the 1994 Sentencing Guidelines apply to offenses committed from January 1, 1994, through May 24, 1997, and the 1995 Sentencing Guidelines apply to offenses committed from May 25, 1997, through September 30, 1998." 15A Fla. Jur. 2d *Criminal Law-Procedure* § 2491 (2022).

but always with the discretion to impose a sentence "upward or downward by up to, and including, 25 percent from the recommended guidelines prison sentence"—a spread that created a kind of "guidelines range" centered around the defendant's "presumptive sentence." FLA. STAT. § 921.0016(1)(b) (1996).

There were two major exceptions to this sentencing regime, both of which are relevant here. *First*, the trial court could impose an upward or downward departure (*i.e.*, "a sentence that deviates from the recommended prisoner sentence by more than 25%") if certain aggravating or mitigating circumstances justified that departure. *See* FLA. R. CRIM. P. 3.703(d)(30); *see also* FLA. STAT. § 921.0016(3)–(4) (1996) (enumerating the aggravating and mitigating circumstances "under which a departure from the sentencing guidelines is reasonably justified"). But Florida law required trial judges *both* to "orally articulat[e]" the reasons for their departures *and*, within seven days of any departure, to file "a written statement, signed by the sentencing judge, delineating the reasons for departure." FLA. R. CRIM. P. 3.703(d)(30)(A).

*Second*, the trial judge could disregard the sentencing guidelines entirely if the offense of conviction triggered a "mandatory penalty." *Id.* FLA. R. CRIM. P. 3.703(d)(29) ("If the presumptive sentence is less than the mandatory penalty, the mandatory sentence takes precedence."). One such mandatory penalty is relevant here: the HVFO enhancement. *Cf. Clines v. State*, 912 So. 2d 550, 553 (Fla. 2005) ("To be sentenced as a [HVFO], a defendant must have been convicted of one prior enumerated felony and must have committed his current felony [within five years of his last conviction.]"). At the time Burgess was sentenced, a defendant who met the requirements for the HVFO enhancement—and who had committed "a life felony or a felony of the first degree"—was subject to a mandatory minimum penalty of fifteen years with a maximum of life. FLA. STAT. § 775.084(4)(b)(1) (1996).

18

With that primer out of the way, we can finally determine whether the state court reasonably applied *Strickland* when it found that Burgess's resentencing lawyer *didn't* err by failing to object to the upward departure. The state postconviction court found that counsel's performance *wasn't* deficient because Burgess's HVFO sentence wasn't vacated in 2000. *See* Order Denying Third Postconviction Motion [ECF No. 10-2] at 276 ("His original HVFO sentences were not imposed under the guidelines. No prohibition exists to seek aggravated or an 'upward departure' sentence following the reversal or deletion of an HVFO term."). This finding wasn't unreasonable.

It's undisputed that Burgess was first sentenced as an HVFO on July 16, 1999. *See* Sentencing Orders [ECF No. 10-1] at 18–26. It's *also* undisputed that, on August 8, 2000, the state trial court corrected the original sentence *nunc pro tunc* to the original sentencing date of July 16, 1999. *See* Amended Sentencing Orders [ECF No. 10-1] at 42–47. Under state law, a *nunc pro tunc* sentencing order is meant "to correct the record of an order actually made" and "refers, not to a new or de novo decision, but to the judicial act previously taken, concerning which the record was absent or defective." *Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261, 1266 (11th Cir. 2020). The 2000 amended sentencing order corrected two errors: It eliminated the mandatory minimum penalty the original court had imposed as to Counts 1 and 2, and it lowered Burgess's sentence on Count 3 to thirty years. *See* Amended Sentencing Orders [ECF No. 10-1] at 42–47; *see also* Response to 3.800(b) Motion [ECF No. 10-1] at 40 (agreeing that "any minimum mandatory sentences [should be] stricken, and the sentence on [Count 3] (aggravated battery with a deadly weapon) [should be] reduced to 30 years incarceration"). Under Florida law, however, those aspects of the original 1999 sentence that weren't corrected by the 2000 sentencing remained in full force and effect. *See Boggs v. Wainwright*, 223 So. 2d 316, 317 (Fla. 1969) ("That a court of record may, even after the term has expired, correct clerical mistakes in its own judgments and records, nunc pro tunc, and that such corrections generally relate

back and take effect as of the date of the judgment, decree, order, writ, or other record so corrected, is well settled.").

Burgess is right that the 2000 sentencing documents make no mention of the HVFO enhancement. *See* Amended Sentencing Orders [ECF No. 10-1] at 42–47. But that's precisely why he loses. The silence Burgess has identified in the 2000 sentencing documents highlights what we already know—which is that the 2000 amendment had *nothing* to do with the HVFO enhancement. And so, the part of the 1999 judgment at issue here—the HVFO designation—was completely unaffected by the 2000 amendment. *See Wells v. State*, 796 So. 2d 1276, 1278 (Fla. 4th DCA 2001) ("[T]he [*nunc pro tunc*] correction . . . would not have revised the legal rights and obligations plainly and properly settled with finality in the earlier judgment. Appellant would still be adjudicated and incarcerated for the crimes for which he was convicted."). In other words, Burgess's argument that he was already serving a sentence on an upward departure (rather than an HVFO designation) from 2000 to 2015—and that he thus couldn't receive a *second* upward departure—is conclusively refuted by state law. And our finding in this regard is buttressed by at least three state-court decisions *in this case*, all of which came to the same conclusion. *See Burgess*, 182 So. 3d at 842 ("On remand, the trial court is free to impose departure sentences if valid grounds for departure are proven."); Order Denying Third Postconviction Motion [ECF No. 10-2] at 276 ("[Burgess's] original HVFO sentences were not imposed under the guidelines."); *Burgess*, 292 So. 3d at 748 (affirming the Order Denying Third Postconviction Motion). Nor should any of this come as a surprise to Burgess who, after all, must've known, after 2000, that he was still serving an HVFO sentence because, in 2007, he *successfully* argued that his then-ongoing HVFO sentence was illegal. *See* 3.800(a) Motion [ECF No. 10-1] at 273 (arguing, in 2007, that "Defendant's sentence under § 775.084(4) (1995) [the HVFO statute]" represented an "unconstitutional habitualization").

Since Burgess hadn't yet been sentenced to an upward departure *before* 2015,[7] the resentencing court was well within its discretion to depart upward from the guideline range. *See, e.g., Key v. State*, 254 So. 3d 1000, 1002 (Fla. 4th DCA 2018) ("[O]nce a defendant's habitual offender designations are stricken, the trial court has discretion in resentencing pursuant to the sentencing guidelines, *including discretion to impose an upward departure sentence* if it provides written reasons." (emphasis added)). And, since the state courts had already rejected Burgess's claim under state law, the postconviction court's conclusion that counsel *couldn't* have been ineffective for failing to raise a futile state-law argument was a reasonable application of *Strickland. See, e.g., Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

We thus **DENY** Ground One.

### III.    Ground Two

In Ground Two, Burgess avers that his resentencing counsel was ineffective for failing to object after "the sentencing judge imposed upward guidelines departure sentences and did not orally articulate the reason for departure at the time [the] sentences were imposed[.]" Petition at 24. But the state-court record unambiguously refutes this claim. *See* Response at 28 ("The appellate court clearly believed that the trial court orally pronounced the reason for departure."); Order Denying Third Postconviction Motion [ECF No. 10-2] at 276–77 ("The record reveals that the sole basis for the departure sentence was detailed in a written motion, fully litigated, orally held 'sufficient' for departure by the Court, and memorialized in a written sentencing Order." (cleaned up)).

In fact, after the Assistant State Attorney (Mr. Raft) argued, at the resentencing, that Burgess's long and serious criminal history justified an upward departure, *see* Resentencing Hr'g Tr. [ECF No.

---

[7] Recall that, although Burgess presented this argument in 2007, he didn't get relief until 2015. *See supra* note 3.

11-1] at 67,[8] the sentencing judge said: "I have to agree with [Assistant State Attorney] Raft," *id.* at 73. Then, citing Raft's recitation, the sentencing court found that "there are sufficient aggravating circumstances which give this court the option of aggravating the sentence over and above the sentencing guidelines." *Id.* at 80. The record is therefore clear that the resentencing court orally adopted the State's position—which was that, under FLA. STAT. § 921.0016(3)(r), an upward (or aggravating) sentence was warranted. And that's probably enough for us to reject Ground Two.

But there's more. Remember that Burgess appealed his new sentence to the Fourth DCA, and that, in doing so, he made this very same argument. *See* Resentencing Initial Brief [ECF No. 10-2] at 145 ("The trial court's failure to give [an] oral pronouncement for its reason to impose upward guidelines departure sentences is reversible error."). The Fourth DCA rejected this argument, saying that it was "without merit." *Burgess*, 252 So. 3d at 767. The Fourth DCA, in other words, has already determined (as a matter of state law) that the resentencing court *properly* articulated its reasons for the upward departure. And we cannot second-guess the Fourth DCA's position on whether a sentencing pronouncement did (or did not) comply with FLA. R. CRIM. P. 3.703(d)(30)(A). *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."). Nor would it make any sense for us to suggest that resentencing counsel was ineffective for failing to object to the (supposed) lack of an oral pronouncement when the Fourth DCA has already found that the resentencing court issued a

---

[8] The prosecutor actually used the term "aggravation," which is state-court shorthand for an upward departure—in large part because the Florida statute that authorizes upward departures requires the sentencing judge to justify the sentence by reference to certain "aggravating circumstances." *See* Resentencing Hr'g Tr. [ECF No. 11-1] at 67 ("The state asks for aggravation in this case. As I indicated in my [sentencing memorandum], the basis for the aggravation would be sufficient if the defendant had one prior conviction for a [level-seven offense]. In this case I have two prior offenses that are level nine and two prior offenses that are level ten."); FLA. STAT. § 921.0016(3)(r) ("Aggravating circumstances under which a departure from the sentencing guidelines is reasonably justified include . . . [when] the primary offense is scored at offense level 7 or higher and the defendant has been convicted of one more offense that scored, or would have scored, at an offense level 8 or higher.").

proper oral pronouncement. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim."). We therefore **DENY** Ground Two.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Further factual development is not required to support our decision. *See Williams*, 529 U.S. at 444 ("The Court of Appeals rejected this claim on the merits under § 2254(d)(1), so it is unnecessary to reach the question whether § 2254(e)(2) would permit [or restrict] a hearing on the claim.").

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Reasonable jurists would not second-guess our decision to deny Grounds One and Two on the merits. We thus **DENY** any request for a COA.

\*\*\*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that a COA is **DENIED**, that any request

for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

       **DONE AND ORDERED** in the Southern District of Florida on November 15, 2022.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Al L. Burgess, *pro se*
        counsel of record

24